**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Howard R. Tallman**

| | |
|---|---|
| In re: | ) |
| | ) |
| **PLATTE RIVER BOTTOM, LLC, et al.,** | ) **Case No. 13-13098 HRT** |
| | ) **Chapter 11** |
| Debtors. | ) |
| | ) |
| | ) |
| **PLATTE RIVER BOTTOM, LLC,** | ) **Adversary No. 14-1231 HRT** |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ADVANTAGE BANK, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

<u>**ORDER ON MOTION TO ABSTAIN**</u>

        This case comes before the Court on *Northstar Bank of Colorado's Motion for Abstention* (docket #83) (the "Motion").

**I. BACKGROUND FACTS**
(as alleged by the parties)[1]

1.    Plaintiff, Platte River Bottom, LLC, (hereinafter "PRB" or "Plaintiff") filed its voluntary petition under chapter 11 (Case No. 13-13098 HRT) on March 5, 2013. Since that time, Plaintiff has remained in possession of its assets, and has operated its business as a Debtor-in-Possession. Its business involves the ownership and leasing of real property and the purchase and sale of water rights, including the water rights at issue in this proceeding.

2.    In August, 2003, Plaintiff acquired certain real property (the "Tisdall Property") and associated water rights consisting of 16 shares of the Godfrey Ditch Company (the "Tisdall Shares") from Donald H. Tisdall.

---

[1] This recitation of factual allegations is taken from the pleadings and from the Court's docket. It does not represent facts found by the Court as a result of evidentiary proceedings.

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

3.    At the time of the acquisition a certificate for the Tisdall Shares standing in the name of Donald H. Tisdall, Certificate No. 277, was transferred and delivered to Plaintiff.

4.    At or about the same time, Plaintiff entered into a "Dry Up Covenant" with the City of Evans (the "City"), acting through its then Director of Public Works, Earl Smith ("Smith"), under which, among other things, Plaintiff agreed that the water and water rights represented by the Tisdall Shares would not be used in connection with the Tisdall Property.

5.    The City has recently informed Plaintiff and others that Smith lacked the authority necessary to accept the Dry Up Covenant and enter into related transactions on behalf of the City and that the Dry Up Covenant and related transactions described below were never lawfully reviewed, approved or authorized by the City.  The City takes the position that the Dry Up Covenant and related transactions with the City are *void ab initio*.[2]

6.    Pursuant to the Dry Up Covenant, Plaintiff transferred the Tisdall Shares to the City, and the City, through Smith, issued 1,280 Equivalent Residential Units ("EQRs") to Plaintiff, evidenced and represented by an entry made on the books of the City's water bank.

7.    In December, 2003, Plaintiff acquired additional real property (the "Gabel Property") and associated water rights consisting of 4 shares of Godfrey Ditch Company (the "Gabel Shares") from Steven and Audrey Gabel. Plaintiff transferred the Gabel Shares to the City, who, through Smith, issued 320 EQRs to Plaintiff, evidenced and represented by an entry on the books of the City's water bank.

8.    In December, 2005, Plaintiff acquired additional real property (the "Sloan Property") and associated water rights consisting of 1 share of Godfrey Ditch Company (the "Sloan Share") from Steven and Audrey Gabel. The Sloan Share, like the Gabel Shares and Tisdall Shares, was transferred by Plaintiff to the City.

---

[2] The City denies that *void ab initio* is a fair description of its position.  *See* Case No. 13-13098-HRT, docket #230.  The City has not responded with respect to the instant Motion, however, in a pleading filed in the main case, it explains that it takes the position that the Dry Up Covenant and related EQR for ditch share exchange transactions were not properly authorized and, as a consequence of that failure, it must either properly ratify the transactions or it must deem the transactions invalid and return the consideration it received.  It does not explain why it has not yet made that determination or when it expects to.

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

Smith, on behalf of the City, accepted the transfer and issued 80 EQRs to Plaintiff, evidenced and represented by an entry on the books of the City's water bank.

9.     In addition to the foregoing acquisitions and transfers, in 2004 and 2005, Plaintiff acquired 4 additional shares of Godfrey Ditch Company and transferred the same to the City, acting through Smith, who issued 320 EQRs to Plaintiff in exchange, all as evidenced and represented by entries on the books of the City's water bank.

10.    The Godfrey Ditch Company shares and EQRs referenced and described above are hereafter referred to as the "Ditch Shares" and "Disputed EQRs" respectively.

11.    Northstar claims a security interest in and lien against, and associated rights to, 525 of the Disputed EQRs, and claims a security interest in and lien against, and associated rights to, an additional 200 EQRs held in the name of Third Party Defendant NPK Water Holdings, LLC ("NPK Water"). Northstar has foreclosed upon and sold 725 EQRs. Plaintiff disputes the validity of that foreclosure and sale.

12.    Advantage Bank ("Advantage") claims a security interest in and lien against, and associated rights to, 325 of the Disputed EQRs, and an additional 80 EQRs held in the name of NPK Water.  Plaintiff disputes the validity of Advantage's claim.

13.    On May 18, 2012, Northstar initiated a lawsuit in Logan County District Court (the "Logan County Court"), Civil Action No. 2012CV55, captioned *Colorado Community Bank v. Nolan Ulmer, Platte River Bottom, LLC and UIV Properties RS, LLC* (the "Logan County Litigation"), asserting claims for the appointment of a receiver for certain real property commonly known as 18501 County Road 27, Sterling, Colorado 80751 (the "Property"), breach of contract, and unjust enrichment.

14.    On September 7, 2012, the defendants in the Logan County Litigation, which includes the Plaintiff in this adversary proceeding, filed their Answer to Verified Complaint. Thereafter, on December 12, 2012, the Logan County defendants / counterclaimants and NPK Water, and H Bar G, LLC, (both Nolan Ulmer entities) filed an Amended Answer To Verified Complaint and Counterclaims (the "Logan County Counterclaim"), asserting numerous claims against Northstar and the receiver.

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

15.    The Logan County Counterclaim asserted claims against Northstar, et al., for: (i) Declaratory and Injunctive relief;[3] (ii) Breach of Contract; (iii) Violation of UCC Art. 9; (iii) Tortious Interference; (iv) Breach of Fiduciary Duty; and (v) Conversion/Civil Theft.  On March 6, 2013, Northstar answered the Logan County Counterclaim.

16.    The Logan County Litigation was set for a five-day jury trial on June 17, 2013, through June 21, 2013, in the Logan County Court.

17.    Originally, Plaintiff's Bankruptcy Schedules indicated that its only meaningful asset was the Property. However Plaintiff has amended its Schedules to assert an interest in certain EQRs.

18.    On May 14, 2013, Northstar filed its Motion for Relief from Stay (docket #43) (the "Relief from Stay Motion"). Thereafter, the Plaintiff filed its Objection to [Northstar's] Motion for Relief from Automatic Stay (docket #49) (the "Response"). On June 11, 2013, the Court convened a preliminary hearing on the Relief from Stay Motion and set a final hearing on Monday, July 8, 2013, which hearing was later rescheduled to August 14, 2013.

19.    Plaintiff and Northstar entered into a Stipulation Between [Plaintiff] and [Northstar] for Relief from Stay and to Vacate August 14, 2013 Final Hearing (docket #65) (the "Stipulation"). The Stipulation was approved by the Court on August 12, 2013 (docket #66) (the "Order") and provided, in relevant part, that:
    (1)    the stay is modified to allow [Northstar] and the Debtor to continue and fully prosecute the Logan County Litigation against one another, but no execution upon or attempt to enforce any judgment entered in the State Court Litigation is permitted without further order by this Court;
    (2)    [Northstar's] request for relief from stay with regard to the Property is held in abeyance pending the outcome of the State Court Litigation, including the trial presently set for January 6-10, 2014 (the "State Court Trial"); and
    (3)    the Debtor, its principal, and affiliates who are parties to the State Court Litigation shall not seek a continuance or stay of the State Court Litigation based on the Debtor's bankruptcy filing, or on this Stipulation, or the entry

_____

[3] The request for declaratory and injunctive relief included 14 requests for relief, all arising under state law, and largely focused on Northstar's foreclosure of 725 EQRs.  While not identical in all respects, the prayer for declaratory relief asserted by PRB, Ulmer, and others in the Logan County Counterclaim is substantially similar to the original complaint filed in this adversary proceeding.

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

of an Order approving this Stipulation, and, absent unforeseen circumstances wholly unrelated to the Debtor's bankruptcy case, shall not seek a continuation of the State Court Trial.

20.    On November 20, 2013, Nolan Ulmer ("Ulmer"), a Defendant and counterclaimant in the Logan County Litigation, along with his spouse Patricia Ulmer, filed a voluntary Chapter 11 petition in this Court. The following day, UIV Properties RS, LLC ("UIV"), NPK Water, and NPK Investments, LLC ("NPK Investments") (collectively, the "Ulmer Related Entities") also filed chapter 11 petitions in this Court.  The Logan County Court vacated the trial date and stayed the Logan County Litigation for a second time.

21.    Prior to the Ulmers and the Ulmer Related Entities filing their bankruptcy petitions, Advantage had initiated litigation styled *Advantage Bank v. NPK Investments, LLC, et al.*, Case No. 2013CV136 in the Weld County District Court (the "Weld County Litigation").  Defendants in the Weld County Litigation include the Ulmers, Ulmer Investments and PRB.  Also named is the U.S. Internal Revenue Service because of its tax lien on Mr. Ulmer's personal property. Advantage has taken no position on the instant Motion.

22.    On January 3, 2014, Advantage filed its Motion for Relief from Automatic Stay (Case No. 13-13098-HRT; docket #100).  It sought relief in order to continue prosecution of the Weld County Litigation.

23.    On or about June 4, 2014, Plaintiff, Advantage, the Ulmers and NPK Investments entered into a Settlement Agreement (Case No. 13-13098-HRT, docket #142, Exhibit 1) providing, among other things, that Advantage would receive payment in a certain amount, and if not, would be entitled to relief from the automatic stay to proceed with foreclosure upon the EQRs in which it claims a security interest (the "Settlement Agreement"). The City was not a party to the Settlement Agreement.

24.    The Settlement Agreement was approved by order of this Court on June 27, 2014 (Case No. 13-13098-HRT, docket #150).  The Ulmer parties did not perform their obligations under the Settlement Agreement and Advantage initiated foreclosure with respect to the EQRs subject to the Settlement Agreement.

25.    On October 28, 2014, the City, through its attorneys, issued a letter in which it took the position that Smith had no authority to either accept the PRB Shares or issue the Disputed EQRs, and that the transactions through which the PRB Shares were transferred to the City and the Disputed EQRs were issued were and are *void ab initio*.

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

26.     On May 9, 2014, Plaintiff commenced this adversary case.  Its original complaint (docket #1) sought declaratory relief.  It named Advantage Bank, Northstar Bank of Colorado, the City of Evans, Colorado, and Nolan and Patricia Ulmer as Defendants.  That complaint sought a declaration from the Court as to the respective interests in the Disputed EQRs and the Ditch Shares and the validity of Northstar's foreclosure sale of those EQRs that it claimed a security interest in.

27.     Plaintiff's Amended and Supplemented Complaint (docket #71-2), in addition to the originally requested relief, seeks the Court's declaration regarding the validity of the transaction with the City whereby ditch shares were exchanged for EQRs including the validity of the Dry Up Covenant; the City's obligation to return shares ostensibly exchanged for EQRs and the City's obligations under the Dry Up Covenant; and the validity and enforceability of the Settlement Agreement.

## II.  DISCUSSION

Northstar urges the Court to abstain from adjudicating the instant controversy.  It argues that the Court *must* abstain under 28 U.S.C. § 1334(c)(2) and that, even if the Court finds that mandatory abstention under § 1334(c)(2) is inappropriate, the Court should exercise its discretion to abstain, under 28 U.S.C. § 1334(c)(1).  The Court agrees with Northstar and will grant the Motion.

A.  Bankruptcy Court Authority to Hear the Motion to Abstain

Section 1334 of the Judicial Code vests federal bankruptcy jurisdiction in the district courts.  28 U.S.C. § 1334.  In turn, the district courts refer bankruptcy matters to the bankruptcy courts under 28 U.S.C. § 157.  Unique to federal jurisdiction generally is the statutory provision in § 1334(c) providing that the district court may abstain from hearing a matter that is otherwise well within § 1334's jurisdictional grant.

Because the language of § 1334(c) gives authority to the "district court" to abstain under certain circumstances, the initial question is whether the adjudicative authority given to the bankruptcy courts under 28 U.S.C. § 157 extends to the decision whether to abstain from the exercise of federal bankruptcy jurisdiction.  In the case of *Nat'l Roofing & Sheet Metal, Inc. v. Cincinnati Ins. Co. (In re Nat'l Roofing & Sheet Metal, Inc.)*, the court held that section 1334(c) "authorizes bankruptcy courts to enter binding orders on motions to abstain and permits the appeal of these orders to the district court."  130 B.R. 768, 776-78 (Bankr. S.D. Ohio 1991).  It explained that the 1990 amendments to the Judicial Code and the 1991 amendment to FED. R. BANKR. P. 5011 permit the bankruptcy courts to make the abstention determination subject to appellate review by the district court.  *See also* FED. R. BANKR. P. 5011 ("A motion for abstention pursuant to 28 U.S.C. § 1334(c) shall be governed by Rule 9014 . . . .").

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

### B.  Mandatory Abstention

Federal courts *must* decline the exercise of federal bankruptcy jurisdiction over state law based actions that were pending in state courts prior to the filing of a related bankruptcy case if there is no other basis for the exercise of federal jurisdiction over the dispute, a party makes a timely motion for abstention, and allowing the matter to proceed in its original state court forum will not unduly delay the administration of the bankruptcy estate.  The mandate to abstain from the exercise of federal bankruptcy jurisdiction over disputes of this type is codified in 28 U.S.C. § 1334 as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).  Application of § 1334(c)(2) to this case requires the Court to find that:

1.   Northstar's motion for abstention was timely filed;
2.   this proceeding is "based upon a State law claim or State law cause of action;"
3.   this proceeding is "related to a case under title 11 but not arising under title 11 or arising in a case under title 11;"
4.   Plaintiff's "action could not have been commenced in a court of the United States absent jurisdiction under [28 U.S.C. § 1134];"
5.   "an action [has been] commenced . . . in a State forum of appropriate jurisdiction;" and
6.   the state court action "can be timely adjudicated" in the State Court.

*In re Taub*, 413 B.R. 81, 88 (Bankr. E.D. N.Y. 2009).  *See also* 28 U.S.C. § 1334(c)(2).

*1.   Northstar's Motion for Abstention Was Timely Filed*

Northstar's Motion was timely filed.  This Court set a deadline of January 16, 2015, for the filing of any motions for abstention or for withdrawal of the reference.  Northstar's Motion was timely filed on January 16, 2015.

*2.   This Proceeding Is Based upon a State Law Claim or State Law Cause of Action*

Plaintiff's original complaint named Advantage, Northstar, the City, and the Ulmers as Defendants.  It sought relief based solely upon the parties' rights under state

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

law. There, it sought the Court's declaration of ownership rights in the Disputed EQRs, lien rights in the Disputed EQRs, and the validity of Northstar's foreclosure of its claimed lien rights in the Disputed EQRs.

Plaintiff amended its complaint following the City's repudiation of the Dry Up Covenant and related transactions whereby the City gave EQRs to the Debtor and related entities in exchange for Ditch Shares. The Amended Complaint (docket 71-2), in addition to declaratory relief requested in the original Complaint, seeks declaratory relief regarding validity of transactions with the City, validity and enforceability of the Settlement Agreement and the obligations of the parties with respect to those matters. Finally, Plaintiff seems to seek lien avoidance under 11 U.S.C. § 544 in the event that the Court should declare the various disputed liens to be valid.

The validity and enforcement of the Dry Up Covenant and related transactions are matters to be decided solely with reference to state law and do not imply any federal question. As noted below, Plaintiff's reference to § 544 fails to pass muster under federal notice pleading standards and the Court disregards it.

The issues concerning the validity of the Settlement Agreement present a more mixed question. Because the Settlement Agreement was entered into to settle a motion filed in this Court and the Settlement Agreement was approved by the Court, issues concerning that agreement would seem to be matters of unique interest to the Court. But the underlying subject matter of the Settlement Agreement is far more closely related to the litigation taking place in the Weld County Court.

The Settlement Agreement was entered into in order to resolve Advantage's Motion for Relief from Automatic Stay in the main bankruptcy case (Case No. 13-13098-HRT, docket #100). Signatories to the Settlement Agreement are Advantage Bank, the Ulmers, NPK Investments and PRB. The parties agreed that Advantage would be paid a sum certain in settlement of the parties' dispute and, upon the failure of the Ulmer parties to perform that obligation, they agreed to withdraw their opposition to Advantage's motion in this Court and to cooperate with the foreclosure process in the Weld County Court. Objections to Advantages' motion were originally filed by PRB (Case No. 13-13098-HRT, docket #105) and by the Ulmers and NPK Investments (Case No. 13-13098-HRT, docket #106).[4] The Ulmer parties failed to make the settlement payment. The Ulmers and NPK Investments withdrew their objection (Case No. 13-13098-HRT, docket #169) and so did PRB (Case No. 13-13098-HRT, docket #170). Following withdrawal of

---

[4] In addition, Northstar filed a limited objection (Case No. 13-13098-HRT, docket #110). The objection was subsequently withdrawn pursuant to a stipulation entered into among Northstar, Advantage and the City.

Page 8

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

the objections, the Court entered its order granting Advantage relief from the automatic stay (Case No. 13-13098-HRT, docket #172). Thus, the Debtors' obligations to either pay a settlement amount or to withdraw their opposition to relief from stay in this Court has been fully performed.

Moreover, the relief from stay aspect of the Settlement Agreement is a moot point. Quite apart from Advantage's motion for relief or the parties' Settlement Agreement, the Court must and will lift the stay to allow these issues to be fully litigated in the Weld County Court.

The other primary aspect of the Settlement Agreement is appropriately addressed by the Weld County Court. In that portion of the Settlement Agreement, the Debtors agreed to cooperate with foreclosure proceedings in the Weld County Court. That issue is inextricably bound with the enforceability of the Dry Up Covenants and related transactions because the focus of the Plaintiff's argument with respect to the Settlement Agreement is that it is unenforceable due to mutual mistake. The matters to be decided in the Weld County Court will determine whether or not the Dry Up Covenants and related transactions are fully enforceable; whether Advantage's collateral merely changes from EQRs to Ditch Shares such that the fundamental basis of the Settlement Agreement is largely in-tact; whether the form of property subject to the parties pre-petition transactions is so transformed that it would be unjust to enforce the pledge of the Ulmers and their entities to cooperate with foreclosure proceedings; or none of the above. Regardless of the Weld County Court's conclusions regarding the Settlement Agreement, the enforceability of the pledge of cooperation in the Weld County foreclosure proceedings is strictly a matter of state law based interpretation of the Settlement Agreement in light of that court's conclusions with respect to the Dry Up Covenants and related transactions. It raises no federal question.[5]

The Court finds that all causes of action stated in the Amended Complaint are based upon state law.

3.    *This Proceeding Is Related to a Case under Title 11 but Not Arising under Title 11 or Arising in a Case under Title 11*

---

[5] The Plaintiff suggests that this Court *must* adjudicate the Settlement Agreement issues because the Settlement Agreement includes a forum selection clause that designates this as the court to adjudicate any disputes that arise with respect to the agreement. But, while the Court takes the parties' forum selection clause into account, such a clause cannot be used to impose a duty upon the Court to retain federal bankruptcy jurisdiction over these matters in a case that presents no federal question and where 28 U.S.C. § 1334(c)(2) mandates abstention.

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

As noted above, Plaintiff's original complaint in this case was substantially similar to the counterclaims that Ulmer and related entities asserted in the Logan County Litigation.  Nothing in that original complaint could be construed as either arising under title 11 or arising in a case under title 11.

However, in its Amended Complaint, Plaintiff makes reference to a cause of action "arising under title 11" by citing to § 544 of the Bankruptcy Code.  It seeks the Court's declaration that:

> The PRB Shares and/or equivalent Godfrey Ditch shares are not subject to any enforceable security interest or lien in favor of Northstar and/or Advantage or, *alternatively, any security interest or lien that Northstar and/or Advantage might claim is avoidable under 11 U.S.C. 544*, or otherwise . . . .

Amended Complaint, ¶24.D.

Section 544 allows a debtor-in-possession to exercise state law avoidance rights possessed by certain hypothetical judicial lien holders, judgment creditors or *bona fide* purchasers of real property.  11 U.S.C. § 544(a)(1) - (a)(3).  It also allows a debtor-in-possession to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim  . . . ." 11 U.S.C. § 544(b).  Thus a cause of action under § 544(a) relies on hypothetical rights of certain classes of creditor and a cause of action under § 544(b) allows a trustee or debtor-in-possession to step into the shoes of an existing unsecured creditor to exercise lien avoidance rights on behalf of the estate.  The basis of a claim under § 544(a) is different from one under § 544(b) yet the Amended Complaint only makes reference to § 544 and not to an applicable subsection.  What §§ 544(a) & (b) do have in common is that they both rely on underlying non-bankruptcy law avoidance theories.  Yet the Amended Complaint reveals no underlying non-bankruptcy law avoidance theory Plaintiff might utilize under either subsection of § 544.  On its face, the Court finds that the Plaintiff has stated no claim for § 544 relief under federal notice pleading rules.  *See* Fed. R. Civ. P. 8.[6]  As a consequence Plaintiff's reference to § 544 does not make this a proceeding that arises under title 11.

The Plaintiff does seek one form of relief that, in a sense,  arises "in a case under title 11."  It seeks the Court's determination of whether and to what extent the Settlement Agreement is enforceable.  *See* Amended Complaint ¶24.C. & ¶24.F.  The Amended

---

[6] Made applicable to this proceeding by FED. R. BANKR. P. 7008.

Page 10

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

Complaint that includes the issue concerning the Settlement Agreement was filed following the City's repudiation of the Dry Up Covenant and related transactions.

But the Court does not apply abstention doctrine by parsing a complaint into all of its component causes of action. The statutory language refers to "a proceeding." 28 U.S.C. § 1334(c)(2). Thus, the Court must analyze the case as a whole and does not perform multiple abstention analyses to determine the applicability of § 1334(c)(2) to each individual cause of action. The principal dispute among the parties and the gravamen of the Amended Complaint goes to ownership of EQRs; validity and enforceability of associated security agreements; and how the City's repudiation of the Dry Up Covenant and related transactions affects those ownership rights and security interests. The fact that the Settlement Agreement was entered into in the course of a bankruptcy case does not transform this proceeding into one either arising under title 11 or arising in a case under title 11.

4.    *Plaintiff's Action Could Not Have Been Commenced in a Court of the United States Absent Jurisdiction under 28 U.S.C. § 1134*

Bankruptcy jurisdiction under 28 U.S.C. § 1334 is the sole basis alleged for federal jurisdiction of any causes of action appearing in the Plaintiff's Amended Complaint.

5.    *An Action Has Been Commenced in a State Forum of Appropriate Jurisdiction*

On May 18, 2012, Northstar initiated The Logan County Litigation in Logan County District Court naming Nolan Ulmer, Platte River Bottom, LLC and UIV Properties RS, LLC, as defendants and asserting claims for the appointment of a receiver for the Property, breach of contract, and unjust enrichment. The defendants in the Logan County Litigation, asserted claims against Northstar and others for (i) Declaratory and Injunctive relief;[7] (ii) Breach of Contract; (iii) Violation of UCC Art. 9; (iii) Tortious Interference; (iv) Breach of Fiduciary Duty; and (v) Conversion/Civil Theft.

Advantage has commenced a second action in Weld County. That action concerns Advantage's efforts to foreclose its interest in EQRs that it alleges were pledged to it by the Ulmers and by NPK Investments. Thus, all of the parties present in this

---

[7] The request for declaratory and injunctive relief included 14 requests for relief, all arising under state law, and largely focused on Northstar's foreclosure of 725 EQRs. While not identical in all respects, the prayer for declaratory relief asserted by PRB, Ulmer, and others in the State Court Counterclaims is substantially similar to the original complaint filed in this adversary proceeding.

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

proceeding and all of the claims present in this proceeding are the subject of prior litigation in state courts.

6.      *The State Court Action Can Be Timely Adjudicated in the State Forum*

The timely adjudication factor is not an exercise in predicting when a matter will be resolved in a state forum compared to when it is likely to be resolved in a bankruptcy court.  Instead, the Court's focus is primarily whether proceedings in this Court are likely to be prejudiced by allowing matters raised in this adversary proceeding to be adjudicated in the state courts.  *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 778 (B.A.P. 10th Cir. 1997).

> In considering whether allowing a case to proceed in state court will adversely affect the administration of a bankruptcy case, courts have considered some or all of the following factors: (1) backlog of the state court and federal court calendar; (2) status of the proceeding in state court prior to being removed (i.e., whether discovery had been commenced); (3) status of the proceeding in the bankruptcy court; (4) the complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; (6) whether a jury demand has been made; and (7) whether the underlying bankruptcy case is a reorganization or liquidation case.  While some of these factors require the moving party to present evidence, such as the status of the state court calendar and status of proceedings in the state court, other factors are evident from a bankruptcy court's record, such as the status of the adversary proceeding before it, the consent of parties to have the court enter judgments, and the nature of the underlying bankruptcy case.

*Id*. at 778-79.

The record discloses that the Logan County Litigation was expeditiously set for trial in the Logan County Court.  The case was filed on May 18, 2012.  On October 29, 2012, Defendants' counsel served notice that a trial was set for June 27, 2013.  Plaintiff filed its bankruptcy petition on March 5, 2013.  The primary issues raised in the instant adversary proceeding with respect to Northstar were postured for resolution in the Logan County Court and would likely have been resolved there but for the Plaintiff's filing of its bankruptcy case.

Subsequently, in August of 2013, the Plaintiff and Northstar stipulated to relief from the automatic stay to allow the Logan County Litigation to resume.  That stipulation recited that the Logan County Litigation was scheduled for trial on January 6  through 10 of 2014.  Again, the primary disputes among those parties were postured for resolution in

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

the Logan County Court and, again, the resolution was derailed when the Ulmers and the
Ulmer Related Entities filed their bankruptcy cases.

　　The evidence before the Court persuades it that the Logan County Court had
diligently tried to move the parties' disputes to a final resolution only to be frustrated in
its efforts by, first, the Plaintiff and, later, the Ulmers and related entities filing
bankruptcy cases which had the effect of staying the Logan County Litigation.  The Court
is further persuaded that, if unhindered by the automatic stay or the prospect of
potentially conflicting federal bankruptcy jurisdiction, the Logan County Court will
continue its efforts to adjudicate these matters.

　　The record is more sparse with respect to the Weld County Litigation.  According
to Advantage, "the Weld county Litigation revolves around Advantage's efforts to
foreclose upon the 325 EQRs that were pledged to it by the Ulmers and the 80 EQRs that
were pledged to it by NPK Water Investments, LLC (which efforts have addressed the
existence and pledging of various EQRs by the Ulmers and related Ulmer entities)."
(docket #100 ¶3.b.).  By the court's order of July 26, 2013, it entered a money judgment
by default in favor of Advantage and against the Ulmers and NPK Investments in the
total amount of $2,659,084.22.  "[T]he current parties to the Weld County Litigation
include NPK Investments, LLC, Nolan Ulmer, Patricia Ulmer, Platte River Bottom, LLC,
Advantage Bank and the Internal Revenue Service (which possesses a federal tax lien on
the personal property of Mr. Ulmer, including ostensibly the EQRs that are issue . . . )."
(docket #100, ¶3.a.).  "[U]ntil July 2014, Northstar was also a party to said action."  *Id*.
According to Northstar,

> After responding to the Advantage Complaint, Advantage and Northstar
> undertook substantial efforts to determine if the Ulmer and the Ulmer
> Related Entities owned sufficient EQRs to satisfy Advantage's and
> Northstar's respective security interests. As a result of these efforts,
> Northstar, Advantage, and the City of Evans executed a Stipulation that
> the Ulmer and the Ulmer Related Entities owned sufficient EQRs to
> satisfy both Northstar's and Advantage's security interests.  (docket #30,
> ¶18).

　　Turning to the timeliness factors listed in *Midgard* the Court finds that abstention
is unlikely to interfere with administration of the bankruptcy case:

　　(1)　*Backlog of the state court and federal court calendar.*  The Court has no
　　　　information as to the relative backlog of the Court's calendar as compared
　　　　to Weld and Logan counties.  It is apparent, however, that the Logan
　　　　County Litigation was proceeding through that court at a rate that would
　　　　compare favorably with adjudication in this Court and likely result in
　　　　resolution of those issues more rapidly than would be possible starting

from the beginning in this Court. The Court has less information on the progress of proceedings in Weld County. It is clear that a money judgment had been entered and that alter-ego issues had been litigated in that court. Thus, the Weld County Court has conducted significant proceedings but the Court has no information relating to the progress of Advantage's foreclosure of its interest in EQRs. The Weld County Litigation was filed on February 19, 2013. (docket #30, ¶17). In July, 2013, the money judgment was entered. On September, 13, 2013, that court had entered its ruling on the alter-ego issues. (docket 100, ¶19). The Court concludes that matters brought before the court in the Weld County Litigation were being expeditiously handled and that moving the litigation into federal court would more likely have the effect of slowing down the adjudicative process rather than speeding it up.

(2) *Status of the proceeding in state court prior to being removed (i.e., whether discovery had been commenced).* The Logan County Litigation was scheduled for trial. At minimum, a money judgment had been entered against the Ulmers and NPK in the Weld County Litigation and a decision had been rendered on alter-ego issues before the Ulmers and NPK filed their bankruptcy petitions. It does not appear to the Court that the issues of ownership of, and security interests in, the EQRs were matters that were well developed in that case before the bankruptcy cases were filed.

(3) *Status of the proceeding in the bankruptcy court.* Matters have not proceeded far in this Court so both the Logan County and the Weld County courts have substantially more history with the parties and the issues than this Court does.

(4) *The complexity of the issues to be resolved.* Issues of ownership and security interests generally do not present particularly complex legal issues. This factor neither supports abstention or retention of jurisdiction.

(5) *Whether the parties consent to the bankruptcy court entering judgment in the non-core case.* No party has objected to adjudication of these matters in the bankruptcy court.

(6) *Whether a jury demand has been made.* The Logan County Litigation was scheduled to be tried to a jury before it was derailed by the bankruptcy filings. The Court has no information concerning jury trial in the Weld County Litigation and no jury demand has been made in this Court.

(7) *Whether the underlying bankruptcy case is a reorganization or liquidation case.* Since these are reorganization cases, the Court is sensitive to the needs of the reorganization debtors and has considered whether retention of jurisdiction is necessary in order to facilitate the reorganization cases. Because the Court cannot find that retention of federal jurisdiction over these disputes is likely to confer an advantage with respect to speed of

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

adjudication, this factor does not counsel in favor of retaining these matters in federal court.

After considering the above factors, with particular focus on the progress of proceedings in Weld and Logan Counties, the Court finds that abstention will not adversely affect administration of the bankruptcy cases. That does not mean that resumption of the Logan County Litigation and the Weld County Litigation will be without complication. The fact that litigation is occurring in two different counties is a concern to the Court and that is a factor in favor of retention of federal jurisdiction over these disputes. Also, a new complication has arisen since the initial filing of the Logan County Litigation and the Weld County Litigation that will affect the course of those cases. The City's repudiation of the Dry Up Covenant and related transactions raises closely related issues that will likely be joined with those that were pending at the time those proceedings were stayed. Moreover, formulation of a reorganization plan will be difficult until these matters are resolved. Nonetheless, because many of those factors will be present regardless of where the cases are adjudicated, on balance, the Court finds that resumption of the cases in the state courts, which have conducted significant proceedings with respect to both cases, will not hamper administration of the bankruptcy cases.

The Court must abstain from adjudicating this proceeding under 28 U.S.C. § 1334(c)(2). As the above discussion indicates, the Court finds all of six elements required for mandatory abstention under § 1334(c)(2) are present in this case. Accordingly, it will abstain and modify the automatic stay in the related bankruptcy cases to allow the state court cases to move forward.

C. Discretionary Abstention

Even when abstention is not mandatory under § 1334(c)(2), federal courts, in their discretion, may abstain from hearing certain matters that are within the federal courts' bankruptcy jurisdiction when such abstention serves "the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). The fact that abstention is specifically provided for in the bankruptcy jurisdiction statute shows that Congress was cognizant of the potential for conflicts to arise between state and federal jurisdiction and contemplated that, when the exercise of federal bankruptcy jurisdiction would impact the relationship between state and federal courts, the federal courts should give consideration to those issues of federalism in making the determination whether or not to exercise federal bankruptcy jurisdiction. See, e.g., *In re WorldCom, Inc. Securities Litigation*, 293 B.R. 308, 332 (S.D. N.Y. 2003) ("The various abstention doctrines 'share a common matrix: a complex of considerations . . . .' Those considerations include comity and federalism, judicial economy, and efficiency.") (quoting *In re Pan American Corp.*, 950 F2d 839, 846 (2nd Cir. 1991)).

When courts consider applicability of discretionary abstention under § 1334(c)(1), they consider the following factors:

Page 15

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

1.   the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention,

2.   the extent to which state law issues predominate over bankruptcy issues,

3.   the difficulty or unsettled nature of the applicable law,

4.   the presence of a related proceeding commenced in state court or other nonbankruptcy court,

5.   the jurisdictional basis, if any, other than 28 U.S.C. § 1334,

6.   the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,

7.   the substance rather than form of an asserted . . . proceeding [arising under title 11 or arising in a case under title 11],[8]

8.   the feasibility of severing state law claims from . . . bankruptcy matters [arising under title 11 or arising in a case under title 11] to allow judgments to be entered in state court with enforcement left to the bankruptcy court,

9.   the burden of [the bankruptcy court's] docket,

10.  the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties,

---

[8] The Court has altered the original quoted language to replace the term "core" with "arising under title 11 or arising in a case under title 11." It does so to avoid confusion between 1) issues pertaining to the exercise of federal jurisdiction and 2) whether a matter that does come within federal bankruptcy jurisdiction may be decided by a bankruptcy judge or must be decided by an Article III judge. The term "core" is used in the Judicial Code solely in reference to those matters that both come within the ambit of federal bankruptcy jurisdiction and may be determined by a bankruptcy judge as opposed to an Article III judge. 28 U.S.C. §§ 157(b) & (c). *See also Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982). The Supreme Court has reminded us of that vital distinction in a recent series of cases beginning with *Stern v. Marshall*, 131 S. Ct. 2594 (2011). *See also Executive Benefits Ins. Agency v. Arkinson*, 134 S. Ct. 2165 (2014); *Wellness Int. Newtwork, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015). By contrast, the term "core" is nowhere present in 28 U.S.C. § 1334, which defines federal bankruptcy jurisdiction and controls abstention from the exercise of that jurisdiction. Thus, a federal court has no occasion to consider whether a matter is a core or non-core proceeding unless it first determines that it has proper bankruptcy jurisdiction and that abstention is not appropriate. Only after those issues are determined does a federal court consider the core or non-core nature of the proceeding in order to determine whether it is a matter that may be adjudicated by a bankruptcy judge or must be adjudicated by an Article III judge instead. By substituting the jurisdictional language of "arising under title 11 or arising in a case under title 11," the Court seeks to focus the analysis on the distinction between those matters that are most intimately connected to federal bankruptcy jurisdiction and those that are merely "related to" a case under title 11.

Page 16

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

11.     the existence of a right to a jury trial, and

12.     the presence in the proceeding of nondebtor parties.

*Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993).

Of the above enumerated factors, the Court relies primarily on 1, 2, 4, 5, 7, 10 and 11. In short, the clear majority of the above factors favor discretionary abstention.

     *1.     The Effect or Lack Thereof on the Efficient Administration of the Estate If a Court Recommends Abstention*

The Court has discussed this factor in detail above. The fact that there are two cases pending in different courts makes this a more difficult question than it would be with respect to either of the individual cases. Nonetheless, as explained above, the Court finds no advantage to be gained, with respect to estate administration, by retaining federal jurisdiction.

     *2.     The Extent to Which State Law Issues Predominate over Bankruptcy Issues*

This factor weighs in favor of abstention. The case involves primarily state law based property rights and security interests. The Plaintiff has hinted at one federal law based cause of action under 11 U.S.C. § 544 but that creates no barrier to the State Court's determination of the issues even if the Plaintiff should successfully articulate a cause of action under § 544. Causes of action under § 544 do not fall within the exclusive jurisdiction of the federal courts. Under the Judicial Code, federal courts have "original *but not exclusive* jurisdiction of all civil proceedings arising under title 11, or arising in or *related to* cases under title 11." 28 U.S.C. § 1334(b). *See also In re Athens/Alpha Gas Corp.*, 715 F.3d 230, 237-38 (8th Cir. 2013) (giving preclusive effect to state court exercise of concurrent jurisdiction over cause of action under 11 U.S.C. § 544). Moreover, any determination made under § 544 is predicated on state law rights. Under § 544, a trustee or debtor-in-possession may avoid transfers avoidable by hypothetical ideal creditors: a judicial lien creditor, a judgment creditor who has obtained an execution against the debtor, or a *bona fide* purchaser of real property who has perfected the transfer, 11 U.S.C. § 544(a), and also transfers that are avoidable by actual holders of unsecured claims. 11 U.S.C. § 544(b).

Thus, the only hint at a federal question in this case is what appears to be a failed attempt to state a cause of action under § 544 in the Amended Complaint. If the Plaintiff is able to articulate a cogent theory of recovery under § 544, such a theory would still be based in state-created rights and would be no hindrance to the state courts which enjoy concurrent jurisdiction over causes of action under § 544.

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

4.    *The Presence of a Related Proceeding Commenced in State Court or Other
       Nonbankruptcy Court*

This factor weighs strongly in favor abstention because the primary disputes
among these parties have been pending in the state courts for three years now.

5.    *The Jurisdictional Basis, If Any, Other than 28 U.S.C. § 1334*

Any possible federal jurisdiction over the issues presented by this adversary
proceeding was created by the serial chapter 11 filings of the Plaintiff, the Ulmers and
their related entities.  The sole basis for federal jurisdiction over the disputes among these
parties is 28 U.S.C. § 1334.

7.    *The Substance Rather than Form of an Asserted . . . proceeding [Arising under
       Title 11 or Arising in a Case under Title 11]*

Plaintiff has stated no cause of action either arising under title 11 or arising in a
case under title 11.  The Plaintiff has made reference to 11 U.S.C. § 544 in its Amended
Complaint.  A cause of action under § 544 arises under title 11.  That section allows a
plaintiff to avoid certain pre-bankruptcy transfers of the debtor and bring such transferred
property back into the bankruptcy estate.  However, as previously discussed, Plaintiff has
given the assertion no substance and has failed to state a cause of action under § 544.

10.   *The Likelihood That the Commencement of the Proceeding in Bankruptcy Court
       Involves Forum Shopping by One of the Parties*

The record persuades the Court of the likelihood that this adversary proceeding
represents an exercise in forum shopping by Ulmer and related entities.  The Logan
County Litigation was originally stayed by Plaintiff's bankruptcy filing.  After Plaintiff
agreed with Northstar, in May of 2013, to return to the State Court to complete the Logan
County Litigation, the Ulmers and related entities filed new bankruptcy cases and the
Logan County Litigation was again stayed along with the Weld County Litigation.
Thereafter Plaintiffs filed this adversary proceeding.  The issues raised in the original
complaint are a substantial repeat of counterclaims asserted by Ulmer and related entities
in the Logan County Litigation.  The timing of the bankruptcy filings; their effect on the
litigation in both courts; and the assertion of substantially similar claims in this adversary
proceeding as were already at issue in the state courts are all circumstances that the Court
finds highly suggestive of a motive to move these disputes into this Court and out of the
state courts.

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

    *11.*    *The Existence of a Right to a Jury Trial*

        The issues presented in this proceeding are predominantly legal issues that may be tried to a jury. The Logan County Litigation was originally set for a five day jury trial. Even though no jury demand has been made in this Court, the nature of the issues to be tried entitles the parties to a trial by jury.

        The Court has considered other factors as well. Factor number 6, the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, weighs in favor of retaining federal jurisdiction over this case. Resolution of the property rights and security interest disputes among these parties is closely related to the main case. Resolution of those issues will determine the nature of property interests in the bankruptcy estates and the extent to which those property rights are encumbered with security interests. Those determinations, in turn, will affect the ability of the various debtors to reorganize and the nature of their reorganization plans.

        Factors that the Court does not find especially important to its determination are factor number 3, the difficulty or unsettled nature of the applicable law; factor number 8, the feasibility of severing state law claims from . . . bankruptcy matters [arising under title 11 or arising in a case under title 11] to allow judgments to be entered in state court with enforcement left to the bankruptcy court (because no such "arising under" or "arising in" matters have been effectively raised); factor number 9, the burden of [the bankruptcy court's] docket; and factor number 12, the presence in the proceeding of nondebtor parties.

        The gravamen of any discretionary abstention determination is the extent to which abstention from exercising federal bankruptcy jurisdiction over a case serves "the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). The above list of factors has been developed over the years by the federal courts as an aid to highlighting how the interests of comity and respect for state law are served by a decision to abstain. However, in the end, the decision to abstain is always made on the basis of the totality of circumstances and the above recognized factors do not serve to limit the circumstances that a court may consider relative to a given case or the weight a court chooses to give to particular factors.

        The factor that weighs strongly in favor of retaining jurisdiction is the relationship of the property and security interest issues raised in the case to the main bankruptcy cases. These disputes are central to the ability of the Plaintiff and the other debtors to reorganize. But the factors on the other side of the ledger overwhelm that one factor. Principle among them is the fact that the circumstances strongly suggest this adversary proceeding and, by extension, the main bankruptcy cases themselves, are an exercise in forum shopping by Mr. Ulmer and the entities under his control. The disputes among these parties are garden variety property rights and security interest issues. Those issues are controlled by state law and were well on their way towards resolution in the appropriate state courts of general jurisdiction.

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

The specialized bankruptcy jurisdiction of the federal courts has been invoked by the
Plaintiff and related parties by the filing of their various bankruptcy cases. But the primary
effect has been to involve the federal courts in controversies that were already well on their way
to resolution in the appropriate state courts. The debtors in these related cases have not filed
plans and the Court doubts their ability to do so until the property rights and security interest
controversies have been resolved. Thus, the valid purpose to file these chapter 11 petitions,
formulation of plans for reorganization, is frustrated until these underlying disputes are resolved
and the resolution of those disputes has been significantly delayed by the attempt of Mr. Ulmer
and his controlled entities to move the controversies into a federal forum.

Under the circumstances here presented, the federal courts' duty of comity to the state
courts could not be more clearly implicated. Comity is a reciprocal duty owed by one sovereign
to another that is indispensable in our federal system. In *Younger v. Harris*, the Supreme Court
described comity as

> a proper respect for state functions, a recognition of the fact that the entire
> country is made up of a Union of separate state governments, and a continuance
> of the belief that the National Government will fare best if the States and their
> institutions are left free to perform their separate functions in their separate ways.

401 U.S. 37, 44 (1971).

The bankruptcy jurisdiction statute, 28 U.S.C. § 1334, is unique in its explicit provision
for discretionary abstention where necessary to serve interests of comity and respect for state
law. Under § 1334, federal bankruptcy jurisdiction can extend to cover cases exclusively
controlled by state law because of a connection to a bankruptcy case and, as a consequence, there
is great potential for conflict between state courts and federal courts exercising bankruptcy
jurisdiction. Frequently, conflicts are resolved in favor of bankruptcy jurisdiction where there is
a significant federal bankruptcy interest to be served by retaining jurisdiction. But here, an
analysis of the surrounding circumstances reveals that asserting federal jurisdiction constitutes a
positive interference in ongoing state court cases; the circumstances reveal no overriding federal
bankruptcy interest to be served by assertion of jurisdiction; and no advantage accrues to either
the parties or the Court. In this case, abstention in deference to the state courts is plainly
indicated.

Under the facts of this case, largely because of the history of proceedings in the state
court, abstention would be appropriate even in the absence of any possibility that filing this
adversary case represents an exercise in forum shopping. But the strong suggestion of a forum
shopping motive that arises from the circumstances of this case reinforces the Court's conviction
that abstention is required and serves the interests of comity and respect for state law.

Page 20

ORDER ON MOTION TO ABSTAIN
Adversary No. 14-1231 HRT

### III.  CONCLUSION

For the reasons stated above, it is

**ORDERED** that *Northstar Bank of Colorado's Motion for Abstention* (docket #83) is GRANTED and the Court hereby abstains from the exercise of federal bankruptcy jurisdiction under 28 U.S.C. § 1334 over this adversary proceeding.  It is further

**ORDERED** that the Court GRANTS RELIEF FROM THE AUTOMATIC STAY to Northstar Bank of Colorado and to Advantage Bank to the extent necessary to fully liquidate all of their claims against the Debtors in these jointly administered bankruptcy cases and to seek determinations of all ownership rights to and security interests in property of the bankruptcy estates.  It is further

**ORDERED** that, until further order of the Court, the automatic stay remains in effect with respect to all property of the Debtors' bankruptcy estates and, until further order of the Court, neither Northstar Bank of Colorado or Advantage Bank is authorized to execute on any money judgment received in a state court or to complete foreclosure proceedings on estate property beyond obtaining judgment as to rights in the disputed collateral.

Dated this ____23rd___day of June, 2015.

**BY THE COURT:**

*Howard Tallman*

Howard R. Tallman, Judge
United States Bankruptcy Court